UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ADAM LESNICK,                        :    05 Civ. 4719 (JCF)
                                     :
             Petitioner,             :    MEMORANDUM OPINION
                                     :        AND ORDER
_____- against -                    :
                                     :
FREDERICK MENIFEE, Warden in his     :
official capacity,                   :
                                     :
             Respondent.             :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


     Adam Lesnick, an inmate in the custody of the United States
Bureau of Prisons (the "BOP"), petitions for a writ of habeas
corpus, challenging a new BOP regulation that limits his
eligibility for placement in a community corrections center ("CCC")
to the last ten percent of his sentence.  Mr. Lesnick seeks an
order mandating that the BOP apply 18 U.S.C. § 3621(b), and not the
new BOP regulation, 28 C.F.R. § 570.21, to determine whether to
transfer him to a CCC.  The parties agreed that I would exercise
jurisdiction over this case for all purposes pursuant to 28 U.S.C.
§ 636(c).  For the reasons that follow, the petition is granted.

Background

     A.   Procedural and Factual History

     On August 9, 2004, in the United States District Court for the
District of Oregon, Mr. Lesnick pled guilty to one count of filing
a false income tax return in violation of 26 U.S.C. § 7206(1) and
two counts of wire fraud in violation of 18 U.S.C. § 1343.
(Declaration of Adam M. Johnson dated August 1, 2005 ("Johnson
Decl."), Exh. C).  He was sentenced to a prison term of 21 months,

followed by 36 months of supervised release. (Johnson Decl., Exh. C.) Mr. Lesnick is currently incarcerated in the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), and his projected release date is March 28, 2006. (Johnson Decl., ¶¶ 1-2 & Exh. A).

In October 2004, FCI Otisville staff conducted an initial evaluation of Mr. Lesnick's eligibility for placement in a CCC. (Johnson Decl., Exh. F). In their Program Review Report, the staff indicated that Mr. Lesnick's sanitation was "satisfactory" and work performance rating was "pending." (Johnson Decl., Exh. F). They deferred any recommendation regarding CCC placement for him. (Johnson Decl., Exh. F). In April 2005, FCI Otisville staff again evaluated Mr. Lesnick, this time reporting that his work performance and sanitation were "good" and that he was participating in a final responsibility program, a release preparation program, a family values program, and recreational activities. (Johnson Decl., Exh. G). The staff reported that his "goals [were] met," and, under "team actions," they indicated "community custody given today." (Johnson Decl., Exh. G). For a "CCC recommendation," the staff listed "on or after 2/2/06 (10%)" (Johnson Decl., Exh. G), the first day of the last ten percent of Mr. Lesnick's prison term.

In July 2005, Mr. Lesnick was again evaluated by FCI Otisville staff, and this Program Review Report also indicated that his performance was "good," he had continued to participate in all of his prison programs, and, as before, his "goals [were] met."

(Johnson Decl., Exh. H).  The recommendation regarding Mr. Lesnick's placement in a CCC was "last review," indicating that Mr. Lesnick was ready for formal institutional review of his eligibility for a transfer to a CCC. (Johnson Decl., ¶¶ 8-9 & Exh. H).

The formal review has not been commenced. (Johnson Decl., ¶¶ 10-12).  Despite Mr. Lesnick's good behavior and regular participation in prison activities, the BOP will not consider transferring Mr. Lesnick to a CCC until February 2, 2006, pursuant to a new BOP rule. (Johnson Decl., Exh. G).  That rule, 28 C.F.R. § 570.21, limits an inmate's eligibility for placement in a CCC to the last ten percent of the sentence, with a six month maximum. Mr. Lesnick  has challenged this regulation on the basis that it conflicts with 18 U.S.C. § 3621(b), the statute governing inmates' "place of imprisonment."  Mr. Lesnick has petitioned for a writ of habeas corpus, seeking an order mandating that the BOP consider transferring him to a CCC in accordance with the statutory guidelines and without reference to the new BOP regulation.  The question before me is whether the new BOP regulation complies with the requirements of Section 3621(b).

B.  History of BOP's New Policy

The place of imprisonment for all inmates is governed by 18 U.S.C. § 3621(b), which provides as follows:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise

and whether within or without the judicial district
in which the person was convicted, that the Bureau
determines to be appropriate and suitable,
considering--

    (1)  the resources of the facility
        contemplated;

    (2)  the nature and circumstances of the
        offense;

    (3)  the history and characteristics of the
        prisoner;

    (4)  any statement by the court that imposed
        the sentence-

        (A)  concerning the purposes for which
            the sentence to imprisonment was
            determined to be warranted; or

        (B)  recommending a type of penal or
            correctional facility as
            appropriate; and

    (5)  any pertinent policy statement issued by
        the Sentencing Commission pursuant to
        section 994(a)(2) of title 28.

In designating the place of imprisonment or making
transfers under this subsection, there shall be no
favoritism given to prisoners of high social or
economic status. The Bureau may at any time,
having regard for the same matters, direct the
transfer of a prisoner from one penal or
correctional facility to another. The Bureau shall
make available appropriate substance abuse
treatment for each prisoner the Bureau determines
has a treatable condition of substance addiction or
abuse.

18 U.S.C. § 3621(b).

In December 2002, in response to a legal memorandum issued by

the Office of Legal Counsel for the United States Department of

Justice (the "OLC Memorandum"), the BOP established a policy

limiting CCC designations to the last ten percent of a prison term,

with a maximum of six months.  A number of courts subsequently
reviewed the policy and issued opinions describing its history in
some detail.  See, e.g., Pinto v. Menifee, No. 04 Civ. 5839, 2004
WL 3019760,  at *9-10 (S.D.N.Y. Dec. 29, 2004)(collecting cases);
Zucker v. Menifee, No. 03 Civ. 10077,  2004 WL 102779, at *8-10
(S.D.N.Y. Jan. 21, 2004) (reviewing legislative history).  The
summary provided by the Eighth Circuit Court of Appeals is
particularly helpful:

> The [2002 OLC] Memorandum acknowledged that §
> 3621(b) gave the BOP the authority to choose an
> inmate's place of imprisonment generally.  However,
> the Memorandum found that "community confinement
> does not constitute imprisonment." [OLC] Memorandum
> at 1, available at http://www.usdoj.gov/olc/bop-
> imprisonment2.htm.  Therefore, § 3621(b) which
> gives the BOP the power to decide a prisoner's
> "place of imprisonment" in "any available penal or
> correctional facility" did not apply to placement
> in CCCs. Id.  According to the Memorandum, the
> authority to transfer a prisoner to a CCC came
> solely from § 3624(c).  This section limited the
> stay "in conditions that will afford the prisoner a
> reasonable opportunity to adjust to and prepare for
> the prisoner's re-entry into the community" to "a
> reasonable part, not to exceed six months of the
> last 10 per centum of the term." 18 U.S.C. §
> 3624(c); see Memorandum at 1, 6.  The Memorandum
> concluded that the BOP had no authority to transfer
> a prisoner to a CCC, except for the lesser of the
> last ten percent of the prison term and the last
> six months of the sentence. . . .
>
> On December 20, 2002, the BOP adopted the opinions
> of the Office of Legal Counsel and the Attorney
> General and instituted a policy that inmates could
> be released to CCCs only for the last ten percent
> of their terms, to be capped at six months.

Eldwood v. Jeter, 386 F.3d 842, 844-45 (8th Cir. 2004).

In reviewing the BOP policy (the "December 2002 rule" or
"December 2002 regulation"), the vast majority of district courts,

and the two appellate courts that considered the issue, ruled that the BOP had misinterpreted the governing statutes. The courts ruled that Section 3621(b), which governs the placement of the prisoner, authorizes the BOP to transfer inmates to correctional facilities at any time during incarceration; Section 3624 governs the "release of a prisoner," and in no way restricts the authority granted by Section 3621. See, e.g., Eldwood, 386 F.3d 842, 847; Goldings v. Winn, 383 F.3d 17, 28 (1st Cir. 2004); Schoenfeld v. Menifee, No. 04 Civ. 3551, 2004 WL 1516797, at *3 (S.D.N.Y. July 7, 2004); Cato v. Menifee, No. 03 Civ. 5795, 2003 WL 22725524, at *4-6 (S.D.N.Y. Nov. 20, 2003). Courts held that a CCC may be designated as the place of imprisonment for service of an entire sentence; it was improper for the BOP to assume that a CCC could serve only as a re-entry facility. Goldings, 383 F.3d at 28; Schoenfeld, 2004 WL 1516797, at *3; Pinto, 2004 WL 3019760, at *9-10; Zucker, 2004 WL 102779, at *7.

As the court explained in Zucker,

> There is surely no inconsistency in the two goals of entrusting the individualized decision of each prisoner's placement to the agency responsible for his or her custody, . . . and requiring that that decision take into account the necessity for some period or condition of transition prior to reentry.

2004 WL 102779, at *10.

In response to the judicial rulings, the BOP proposed a new regulation that again limited inmates' community confinement to the last ten percent of the prison sentence, with a maximum of six

6

months.  69 Fed. Reg.  51,213, 51,214-15 (Aug. 18, 2004) (proposed rule).  The difference between this regulation and its predecessor is simply the BOP's new rationale for the rule.  Whereas the BOP had previously argued that Section 3624(b) prevented it from designating a CCC placement prior to the last ten percent of a prison term, the BOP's new position is that it does have the discretion to place an inmate in a CCC for all or any portion of the prison sentence, but has chosen to "exercise its discretion categorically" and to decline to authorize CCC placement for any prisoner prior to the last ten percent of his sentence.  69 Fed. Reg. at 51,214.

The new BOP regulations, which became effective on February 14, 2005, provide as follows:

§ 570.20  What is the purpose of this subpart?

(a)  This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement.  The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b)  As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

§ 570.21  When will the Bureau designate inmates to community confinement?

(a)  The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison

> > sentence being served, not to exceed six months.
>
> > (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (citation omitted), or shock incarceration program (citation omitted)).

28 C.F.R. §§ 570.20, 570.21.

Discussion

In reviewing the BOP's interpretation of a statute it administers, a court must apply the two-part analysis of Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). "First, as always, is the question whether Congress has directly spoken on the precise question at issue." Chevron, 467 U.S. at 842. To determine Congressional intent, the court need not rely solely on the plain language of the statute. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Id. at 843 n.9.

If Congress did not express an intent concerning the precise issue before the court, the court must proceed to step two of the Chevron analysis. Chevron, 467 U.S. at 843. The question at that stage is whether the agency's view is "based on a permissible construction of the statute." Id.

In this case, Congress did express an intent regarding the process by which the BOP should designate inmates to CCCs. See

8

Goldings, 383 F.3d at 28; Eldwood, 386 F.3d at 845. As explained below, this intent is clearly expressed in both the plain language of Section 3621(b) and the Senate Report accompanying it. Because Congressional intent can be discerned, deference to the BOP's interpretation of the statute is not appropriate. See General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 600 (2004) ("Even for an agency able to claim all the authority possible under Chevron, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent [citation omitted]").

A.    Section 3621(b)

1.   Plain Language

The plain language of Section 3621(b) dictates that the BOP is charged with designating "the place of the prisoner's imprisonment" according to the following guidelines:

> The BOP may designate any available penal or correctional facility that meets minimum standards of health and habitability, ... that the [BOP] determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence [concerning the purposes of the imprisonment or recommending a type of penal or correctional facility]; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission. . . .

9

18 U.S.C. § 3621(b) (emphasis added).  The use of "and" instead of "or" underscores Congress's intent for the BOP to weigh all five listed factors and not to pick and choose among them.  While the BOP maintains discretion regarding the weight it accords each factor when evaluating an inmate for placement in a facility, and the BOP is not barred from taking into account additional considerations, Congress clearly intended for the BOP to follow the prescribed guidelines when making its assessment.

The respondent asserts that the words "may designate," imply that consideration of the factors set forth in Section 3621(b) is voluntary.  (Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp. Memo.") at 13-14).  While I recognize that this argument has previously been accepted by two courts in this district, <u>Wiesel v. Menifee</u>, No. 04 Civ. 9681, 2005 WL 1036297, at *6 (S.D.N.Y. May 2, 2005) (citing <u>Lopez v. Davis</u>, 531 U.S. 230, 241 (2001) (analyzing Section 3621(e)(2), not Section 3621(b)); <u>Lopez v. Apker</u>, No. 05 Civ. 4522, 2005 U.S. Dist. LEXIS 19791, at *12 (S.D.N.Y., Sept. 8, 2005) (citing <u>Wiesel</u>), I find it unpersuasive.  It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."  <u>Deal v. United States</u>, 508 U.S. 129, 132 (1993); <u>see also</u> <u>Davis v. Michigan Department of Treasury</u>, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their

place in the overall statutory scheme."). The use of "may" cannot mean that application of the remaining portion of the statute is entirely dependent upon the will of the BOP. For example, the use of "may" instead of "shall" does not imply that assigning inmates to facilities that meet "minimum standards of health and habitability" is discretionary.

The respondent "would have us put more weight on [this one word] than [it] can reasonably carry." American Hospital Association v. N.L.R.B., 499 U.S. 606, 610 (1991). Congress intended to grant constrained discretion, and while perhaps this could have been expressed more clearly, that would not have been accomplished by substituting "shall" for "may." Common sense dictates that Section 3621(b) means the BOP must designate a place of imprisonment for each prisoner, and the BOP "may" designate any facility it chooses, so long as the facility meets minimum standards and the designation is made in consideration of the five factors listed by Congress.                    2. Legislative History

The legislative history of Section 3621(b) emphasizes that the BOP is mandated to apply the listed factors. See Pimental v. Gonzales, 367 F. Supp. 2d 365, 375 (E.D.N.Y. 2005); Drew v. Menifee, No. 04 Civ. 9944, 2005 WL 525449, at *4 (S.D.N.Y. March 4, 2005); but see Lopez, 2005 U.S. Dist. LEXIS 19791, at *12; Troy v. Apker, No. 05 Civ. 1306, 2005 WL 1661101, at *2 (S.D.N.Y. June 20, 2001) (factors bear on the substantive decision whether to transfer but not necessarily the timing); Wiesel, 2005 WL 1036297 at *5-6; Levine v. Menifee, No. 05 Civ. 1902, 2005 WL 1384021, at *6

11

(S.D.N.Y. June 9, 2005). Section 3621(b) was originally adopted as part of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, Ch. 2, Oct. 12, 1984, 98 Stat. 1987, which was accompanied by a thorough report of the Senate Committee on the Judiciary (the "Senate Report"). S. Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182 (1983). "The most enlightening source of legislative history is generally a committee report, particularly a conference committee report, which [the Second Circuit Court of Appeals has] identified as among 'the most authoritative and reliable materials of legislative history.'" United States v. Gayle, 342 F.3d 89, 94 (2d Cir. 2003) (quoting Disabled in Action of Metropolitan New York v. Hammons, 202 F.3d 110, 124 (2d Cir. 2000)).

Throughout the Senate Report accompanying the Sentencing Reform Act, Congress emphasized that thoughtful and individualized determinations, as opposed to blanket rules, were to be used in sentencing. See S. Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182 (1983). In particular, the Senate Report directly addressed the role of the factors in Section 3621(b):

> [Section 3621(b)] follows existing law in providing that the authority to designate the place of confinement for federal prisoners rests in the [BOP] . . . . Existing law provides that the [BOP] may designate a place of confinement that is available, appropriate, and suitable. Section 3621(b) continues that discretionary authority with a new requirement that the facility meet minimum standards of health and safety established by the [BOP]. In determining the availability or suitability of the facility selected, the [BOP] is specifically required to consider such factors as the resources of the facility considered, the nature and circumstances of the offense, the

history and characteristics of the prisoner, the
statements made by the sentencing court concerning
the purposes for imprisonment in a particular case,
any recommendations as to type of facility made by
the court, <u>and</u> any pertinent policy statements
issued by the Sentencing Commission pursuant to
proposed 28 U.S.C. 994(A)(2). After considering
these factors, the [BOP] may designate the place of
imprisonment in an appropriate type of facility, or
may transfer the offender to another appropriate
facility. . . . The Committee, by listing factors
for [the BOP] to consider in determining the
appropriateness or suitability of any available
facility, does not intend to restrict or limit the
[BOP] in the exercise of its existing discretion so
long as the facility meets the minimum standards of
health and habitability of the [BOP], but intends
simply to set forth the appropriate factors the
[BOP] should consider in making the designations.

S. Rep. No. 98-225, 1984 U.S.C.C.A.N. at 3324-25 (1983)(emphasis
added). The Senate Report expressly stated that the BOP was
"specifically required" to consider the listed factors "in
determining the availability or suitability of the facility
selected" for each offender. <u>Id.</u>

   B.   <u>The New BOP Regulation</u>

   Under the new regulation, the BOP "will designate inmates to
community confinement only as part of pre-release custody and
programming, during the last ten percent of the prison sentence
being served, not to exceed 6 months." 28 C.F.R. § 570.21(a).[1]

_____

   [1] As discussed earlier in this opinion, courts reviewing the
BOP's December 2002 policy found that Congress intended CCC
placement for purposes broader than pre-release adjustment. <u>See,
e.g.</u>, <u>Goldings</u>, 383 F.3d at 26; <u>Schoenfeld</u>, 2004 WL 1516797, at *3;
<u>Pinto</u>, 2004 WL 3019760, at *9-10; <u>Zucker</u>, 2004 WL 102779, at *7.
In this case, the BOP seems to continue to conflate the purpose of
18 U.S.C. § 3621(b) (imprisoning an inmate in the most appropriate
facility) with that of Section 3624(c) (creating pre-release
custody conditions that afford the inmate a reasonable opportunity
to prepare for release into the community). I note that this
confusion was precisely what led to the BOP's previous

                              13

This new policy establishes a bright-line rule that mentions none of the factors that Congress "specifically required" the BOP to consider. See 28 C.F.R. § 570.21; S. Rep. No. 98-225, 1984 U.S.C.C.A.N. at 3324-25. The rule makes individualized determinations unavailable; the BOP will not entertain any requests for placement in a CCC prior to the last ten percent of a prisoner's term, unless the individual falls under a narrow exception for participation in certain treatment programs. No consideration is given to the nature and circumstances of the offense or the history and characteristics of the prisoner, and the regulation completely disregards any judicial recommendation or statement regarding the purposes of an inmate's imprisonment.

Some courts have upheld the BOP regulation on the basis that the BOP claimed it considered the factors of Section 3621(b) in the process of drafting the new rule.[2] See Charboneau v. Menifee, No. 05 Civ. 1900, 2005 WL 2385862, at *6 (S.D.N.Y. Sept. 28, 2005) (BOP states it considered all factors, and in particular it considered factors one and five); Lopez, 2005 U.S. Dist. LEXIS 19791, at *12 (BOP states it considered at least two of the factors and will continue to consider the others); Moss v. Apker, 376 F. Supp. 2d 416, 423 (S.D.N.Y. 2005) (BOP claims it considered all

---

misinterpretation of the governing statutes and the promulgation of its unlawful December 2002 policy.

[2] The BOP claims that it did "carefully consider[] all of the statutorily-specified factors" in the process of drafting its new rule, but the only evidence of such consideration is the BOP's own bald assertion contained in its notice of the rule. See 69 Fed. Reg. 51,213, 51,214 (Aug. 18, 2004).

five factors when making the rule, but weighed two more heavily than the others, and it permissibly took into account considerations of avoiding favoritism and reducing appearance of leniency; "[t]he Court sees no reason to doubt the veracity of these statements"); Troy, 2005 WL 1661101, at *2 (BOP reasonably decided that two factors and issue of favoritism outweighed any other factors); DeFrancesco III v. Federal Bureau of Prisons, No. 05 Civ. 1780, 2005 WL 1712020, at *8-9 (D.N.J. July 20, 2005) (factors were considered by BOP when developing policy; statute does not mandate weight to be given each of five factors).

The respondent acknowledges that "[i]n formulating a categorical rule, the BOP could not [and did not] consider the three Section 3621(b) factors that are specific to an individual inmate." (Resp. Memo. at 14). Of the five mandatory factors, the respondent admits that the BOP neglected those factors that deal with the nature of the offense, the characteristics of the prisoner, and the sentencing court's recommendation. (Resp. Memo. at 14).

The respondent alleges that the BOP did consider factors numbered one and five, "'the resources of the facility contemplated'" and "policies of the United States Sentencing Commission." (Resp. Memo. at 14). With regard to the resources of the facility contemplated, the BOP's consideration consisted of noting that "resources of CCCs make them particularly well suited as placement options for the final portion of offenders' prison terms." See 69 Fed. Reg. at 15,214. However, as discussed above,

courts have held that the BOP's emphasis on CCCs as re-entry facilities, rather than as places of imprisonment potentially for entire sentences, is based on a misinterpretation of the relationship between Section 3621(b) and Section 3624(c). The BOP's current understanding of the governing statute is apparently based on the same misreading that previously led it to promulgate its unlawful December 2002 policy, and this misreading cannot properly serve as a basis for the BOP's new rule.

With regard to the other Section 3621(b) factor that the respondent claims the BOP considered, "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28," § 3621(b)(5), the BOP focused exclusively on Sentencing Guideline 5C1.1, despite recognizing that the Sentencing Guidelines (the "Guidelines") "are promulgated under 28 § U.S.C. 994(a)(1) [and] are distinct from policy statements." <u>See</u> 69 Fed. Reg. at 15,214. The BOP reasoned "where a sentence of imprisonment is required for defendants whose guidelines range falls within Zones B or C of the Sentencing Table, the Guideline authorizes 'community confinement' only as a condition of supervised release. . . . That Guideline thus reflects the Commission's policy determination generally to restrict the availability of community confinement in lieu of imprisonment. . . ." 69 Fed. Reg. at 51,214. This application of a particular provision of the Sentencing Guidelines is improper. The Guidelines were designed specifically "for use of a sentencing court in determining the sentence to be imposed in a criminal

case." 28 U.S.C. § 994(a)(2).[3] The BOP again applies an analysis

---

[3] The text of 28 U.S.C. § 994 provides in part:

§ 994. Duties of the Commission

(a) The Commission, by affirmative vote of at least four members of the Commission, and pursuant to its rules and regulations and consistent with all pertinent provisions of any Federal statute shall promulgate and distribute to all courts of the United States and to the United States Probation System--

    (1) guidelines, as described in this section, for use of a   sentencing court in determining the sentence to be imposed in  a criminal case, including--
        (A) a determination whether to impose a sentence to probation, a fine, or a term of imprisonment;
        (B) a determination as to the appropriate amount of a fine or the appropriate length of a term of probation or a term of imprisonment;
        (C) a determination whether a sentence to a term of imprisonment should include a requirement that the defendant be placed on a term of supervised release after imprisonment, and, if so, the appropriate length of such a term;
        (D) a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively; and

        (E) a determination under paragraphs (6) and (11) of section 3562(b) of title 18;

    (2) general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18, United States Code, including the appropriate use of –

        (A) the sanctions set forth in sections 3554, 3555, and 3556 of title 18;

        (B) the conditions of probation and supervised release set forth in sections 3563(b) and 2583(d) of title 18;

that was already held to be incorrect when the BOP's December 2002 regulation was reviewed. See, e.g., Pinto, 2004 WL 3019760, at *6-9 (summarizing cases holding that the Guidelines "provide no authority for the BOP's interpretation of section 3621(b)"). The BOP's alleged consideration of factor five of Section 3621(b) does not actually relate to the factor as defined in the express language of the statute.

Even if the procedure by which the BOP had adopted its rule were adequate, the result is a categorical determination that is inconsistent with the governing legislation. While the BOP maintains discretion over the designation of facilities, it does not have the authority to re-write the guidelines provided by

---

               (C) the sentence modification provisions set for in sections 3563(c), 3564, 3573, and 3582(c) of title 19;

               (D) the fine imposition provisions set forth in section 3572 of title 18;

               (E) the authority granted under rule 11(e)(2) of the Federal Rules of Criminal Procedure to accept or reject a plea agreement entered into pursuant to rule 11(e)(1); and

               (F) the temporary release provisions set forth in section 3622 of title 18, and the prerelease custody provisions set forth in sections 3624(c) of title 18;

          (3) guidelines or general policy statements regarding the appropriate use of the provisions for revocation of probation set forth in section 3565 of title 18, and the provisions for modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18.

28 U.S.C. § 994.

Congress.

C.    Discretion in Rulemaking

The respondent argues that the BOP has the discretion to engage in rulemaking that would categorically limit CCC placements to the last ten percent of any prisoner's sentence. (Resp. Memo. at 9-15).  The respondent relies on the Supreme Court cases of Lopez v. Davis, 531 U.S. 230 (2001), and American Hospital Association v. N.L.R.B., 499 U.S. 606 (1991).  Lopez concerned the interpretation of 18 U.S.C. § 3621(e)(2), which provides that, with regard to "[i]ncentive[s] for prisoners' successful completion of treatment program[s,]. . . [t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but . . . not [by] more than one year."  See § 3621(e)(2)(B).

Mr. Lopez challenged a BOP regulation that established categories of inmates not eligible for early release, including, inter alia, prisoners whose current offense was a felony attended by the possession of a firearm.  Lopez, 531 U.S. at 239 (citing 28 C.F.R. § 550.58(a)).  The Supreme Court ruled that the BOP may categorically exclude certain prisoners from early release based on pre-conviction conduct, and, further, that the challenged regulation was permissible because the BOP reasonably concluded that involvement with a firearm suggests a dangerousness that appropriately determines the early release decision.  Id. at 244.

Lopez is distinct from the instant case.  See Pimental v. Gonzalez, 367 F. Supp. 2d at 374; but see Bialostok v. Apker, No.

19

05 Civ. 2698, 2005 WL 1946480, at *5 (S.D.N.Y. Aug. 12, 2005); Moss, 376 F. Supp. 2d at 423. Lopez addressed a regulation that filled a statutory gap left by Congress; the regulation in this case, on the other hand, contravenes existing statutory guidelines. Where Congress has "explicitly left a statutory gap for the agency to fill, there is an express delegation of authority to the agency to elucidate" the statute by regulation, and such regulations should be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." See Chevron, 467 U.S. at 843-44. Even where "the legislative delegation to an agency on a particular question is implicit rather than explicit," "considerable weight" should be accorded to the agency's interpretation of the governing law. Id. at 844. The Supreme Court explained that with regard to the statute addressed in Lopez, Section 3621(e), "Congress simply did not address how the [BOP] should exercise its discretion. . . . Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." 531 U.S. at 239, 242 (internal quotation marks omitted). In Section 3621(b), however, Congress has clearly laid out five factors to guide the BOP in determining which inmates are best suited for placement in CCCs. See 18 U.S.C. § 3621(b).

Lopez cites American Hospital Association, 499 U.S. at 612, for the rule that "even if a statutory scheme requires

individualized determinations, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." 531 U.S. at 244-45; see also Yip v. Federal Bureau of Prisons, 363 F. Supp. 2d 548, 552 (E.D.N.Y. 2005) ("[T]he BOP is authorized to create categorical rules even where a statute requires individualized determinations) (quoting Lopez v. Davis, 531 U.S. at 243-44). In American Hospital Association, 499 U.S. at 618, the Court found rulemaking concerning the establishment of bargaining units permissible where the NLRB made a reasonable determination that acute care hospitals did not "differ in substantial, significant ways relating to the appropriateness of bargaining units," and an exception existed for extraordinary circumstances. Similarly, in Heckler v. Campbell, 461 U.S. 458, 468 (1983), also cited in Lopez, the Court held that the Secretary of Health and Human Services could rely on medical-vocational guidelines, instead of expert testimony, to determine whether jobs existed for Social Security Income claimants; this decision was based on the fact that individualized hearings were still used to assess individual abilities, and determinations of whether jobs existed depended on the national economy, not on factors unique to the individual claimants. In both American Hospital and Heckler, the Court found that the creation of categories was permissible because the similarities between those persons or facts being grouped together were more significant than the differences between them.

With the new BOP rule, the opposite is true. Mr. Lesnick may have little to nothing of consequence in common with the other prisoners in his "category." As Section 3621(b) shows, prisoners may be distinguished by offenses, histories, personal characteristics or a variety of other factors. To be sure, the BOP could have constructed categorical regulations that reflected the requirements of the governing statute. See Lopez v. Davis, 531 U.S. at 249 ("To suggest that decisionmaking must be individualized is not to imply that it must also be standardless."). For example, if the BOP had found that all prisoners convicted of a particular offense, or with a specific number of convictions, posed a danger that outweighed all other factors, that might be a reasonable basis on which to limit placement in CCCs for such individuals. See Drew, 2005 WL 525449, at *5. Similarly, the BOP might reasonably create a system whereby any statement by a court imposing a sentence could be categorized. Although possibilities for such rulemaking may exist, in promulgating 28 C.F.R. §§ 570.20 and 570.21, the BOP did not exercise its discretion as required by governing statutory authority. The BOP rule directly contradicts Section 3621(b) and is therefore invalid.

## Conclusion

For the foregoing reasons, the petition is granted and the respondent is ordered to determine, in good faith, the appropriateness of transferring the petitioner to a community confinement center considering the five factors set forth in 18 U.S.C. § 3621(b) in combination with any other reasonably

22

appropriate factors, but without reference to 28 C.F.R. § 570.20 or
§ 570.21. The respondent shall make this determination promptly
and in no event later than twenty (20) days from the date of this
Order.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           October 7, 2005

Copies mailed this date:

Adam Lesnick
67850-065
FCI Otisville
P.O. Box 1000
Otisville, New York  10963

Mara E. Trager, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York  10007

23